UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DERRIE S. WILLIAMS, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:19-cv-1787-SPM |
| | ) | |
| | ) | |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Derrie S. Williams, Sr. ("Plaintiff") for a Period of Disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

## I.    STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v.*

1

*Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## II.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health*

2

& *Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets

3

or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "the most [a claimant] can do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 406.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

### III.    FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2016, Plaintiff filed applications for a Period of Disability, DIB, and SSI. (Tr. 178-79, 180-85). The claims were denied initially, and Plaintiff requested a hearing before an ALJ. (Tr. 104-09, 110). On May 17, 2018, the ALJ held a hearing at which both Plaintiff and a Vocational Expert ("VE"), Susan Shea, testified. (Tr. 42-81). The VE's résumé, which was in the record before the ALJ, shows that at the time of the hearing, she had more than twenty years of relevant experience doing vocational services and evaluations, and she was a certified rehabilitation counselor and had been qualified as a vocational expert by the Social Security Administration. (Tr. 66, 262-64).

The ALJ described to the VE a hypothetical individual of Plaintiff's age, education, and experience, with the RFC the ALJ eventually found Plaintiff had (see below). The ALJ and the VE then had the following exchange:

ALJ:    Can such an individual perform any of the claimant's past work?

VE:    No.

ALJ:    Is there work in the national economy such an individual could perform, and if so, could you give me some examples?

VE:    There would be, yes. There would be work such as Light Laundry Worker. It would be at least 150,000 such jobs in the national economy. Example DOT [Dictionary of Occupational Titles] number would be 302.685-010. There would be work such as Cleaner of Housekeeper. [sic]. There would be at least 300,000 such jobs in the national economy. A sample DOT number would be 323.687-014, that is also light work, unskilled work, with an SVP of 2. . . .
And there would be work such as Packing Line Worker, at the light level. There would be at least 200,000 such jobs in the national economy. A sample DOT number would be 753.687-038, and that is also unskilled work with an SVP of 2.

(Tr. 68-69).

---

[1] Because Plaintiff challenges only the ALJ's findings at Step Five of the five-step process, the Court focuses primarily on the background facts relevant to the ALJ's Step Five findings.

Plaintiff's attorney was then given the opportunity to ask questions of the VE. Plaintiff's attorney described to the VE a hypothetical individual who was limited as described in the ALJ's hypothetical but who had additional limitations: the individual "would be limited in terms of general educational development as described in the DOT and the SCO to no greater than a one for reasoning, no greater than a one for mathematical skills, no greater than a one for language"; that "the individual in terms of the worker functions, the data, people, and things figures—the middle three figures of the DOT codes, could be at no lower than a 6, 8, and 7"; "the individual would be unable to follow—to read, understand, and follow, more than single-word instructions, label, and warnings" and the individual "would be unable to perform mathematical tasks more complicated than two-digit addition and subtraction, not multiplication or division in any form." (Tr. 69-70). After some clarifying questions regarding the specific limitations being described, the ALJ and the VE had the following exchange:

> ALJ:   Well, why don't you start with the jobs, if you have jobs, and then we'll go from there.
>
> VE:   There is one such job is the sedentary Hand Assembler job. However, and I can give you one such DOT that would fit that, and that is 734.687-074, and that is an SVP 2. And I can testify that that particular DOT fit those requirements, however, I think if I, as we had discussed in a prior case, the numbers are not based on the state DOT, so I cannot testify that there would be any significant number, or I cannot even approximate, how many of that particular DOTs that would be. Let me see if I can—
>
> ALJ:   Okay, let me see if I understand what you just said. The sedentary Hand Assembler job with the DOT code you just gave us is classed as SVP 2, but you would testify from, what? Your own knowledge? That that particular job, that particular code, meets the requirements that Mister Camp just specified. Is that what you were saying?
>
> VE:   I'm saying that it meets those requirements because it does have the one under arithmetic, language—oh, and what's the other one?
>
> ALJ:   Reasoning. Reasoning.

6

VE: Reasoning. There is—it does show in the DOT that those are all at the level of one, and so I can say that that particular DOT would fit those requirements, but my numbers are not based on a particular DOT. So, I cannot testify to any number of those jobs.

ALJ: Okay, what are your numbers based on?

VE: My numbers are based on the occupational employment survey which includes numerous DOT codes which would fit under the category of [INAUDIBLE].

ALJ: Okay. Okay.

VE: And the same goes for—I have at sedentary Table Worker. The particular DOT of 739.687-182, the sedentary work, unskilled work, with an SVP of 2. That particular DOT code also fits the reasoning, mathematic, and language qualification of a one, but again my numbers are based on numerous DOT codes, and so I cannot testify to any numbers. And let me check. Okay, I can give you a third DOT. The light Cleaner or Housekeeper, DOT code of 323.687-041—

ALJ: I'm sorry. Would you repeat that? I'm sorry.

VE: Sure. The Cleaner-slash-Housekeeper. That is DOT code 323.687-014, and of course that is light work, unskilled work, with an SVP of 2. That specific DOT also fits the requirements for the reasoning, mathematics, and language code of a one. But again, I cannot testify to any numbers with that specific DOT code.

ALJ: Okay. I guess there we are.

VE: So that's about—that's about the best I can do.

ALJ: Do you have any further questions, Mister Camp? I don't know where that leaves us, but.

Atty: I have no further questions.

ALJ: Okay. All right, well, I'm going to –this is going to sound like an—I don't know. Might be a complicated answer, it might be a simple answer, but I have to ask this question. Has your testimony today been consistent with the DOT?

VE: There have been no inconsistencies; however, I think—I think we had some questions about being off-base and—

ALJ: Actually, I don't think we did.

VE: Okay, in that case, it would be consistent—totally consistent with the DOT.

7

ALJ:   Okay, and since—and since the--- and since your answer on the numbers for those last jobs that you gave me was that you couldn't give me an answer, there's certainly no inconsistency there, I suppose?

VE:    That's correct.

(Tr. 72-75).

On September 19, 2018, the ALJ issued a partially favorable decision. (Tr. 13-37). Applying the foregoing five-step analysis, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2013; that Plaintiff had not engaged in substantial gainful activity since February 28, 2006, the alleged onset date; that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, right shoulder dysfunction, obesity, and borderline intellectual functioning; and that since the alleged onset date, Plaintiff had not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 20-22). The ALJ found that Plaintiff had the following RFC:

> [S]ince February 28, 2006, [Plaintiff] has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following additional limitations: he can frequently reach in all directions with the right upper extremity, although his ability to reach with the left upper extremity is not limited, and he should be exposed to vibrations no more than occasionally. He is limited to hearing and understanding simple oral instructions and to communicating simple information; performing simple, routine, and repetitive tasks, but not at a production rate pace (e.g., assembly line work); and making simple work-related decisions in an environment with few changes in setting or duties. He can have occasional interaction with the public.

(Tr. 26). At Step Four, the ALJ found that since the alleged onset date, Plaintiff had been unable to perform his past relevant work as a kitchen helper. (Tr. 34).

At Step Five, the ALJ noted that on August 11, 2018, Plaintiff's age category changed, and Plaintiff became an individual of advanced age. (Tr. 34). Relying on the testimony of the VE, the ALJ found that for the period prior to August 11, 2018, there were jobs that existed in significant

8

numbers in the national economy that Plaintiff could perform, including representative occupations such as laundry worker, cleaner/housekeeper, and packing line worker. (Tr. 35). The ALJ noted that she found the VE's testimony consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 35). For the period beginning on August 11, 2018, the ALJ found that a finding of "disabled" was directed by Medical-Vocational Rule 202.01. (Tr. 36). The ALJ thus found Plaintiff was not disabled prior to August 11, 2018, but that Plaintiff became disabled on that date and continued to be disabled through the date of the ALJ's decision. (Tr. 36). The ALJ also noted that Plaintiff was not under a disability at any time through March 31, 2013, the date last insured. (Tr. 36).

The Appeals Council declined to review the ALJ's decision, and the decision of the ALJ stands as the final decision of the Commissioner. (Tr. 1-4).

IV.    DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed for one reason: that the ALJ erred in relying on the VE's testimony at Step Five. At Step Five, it is the Commissioner's burden to "identify the types of jobs [a claimant] could perform notwithstanding his disabilities" and to "ascertain whether those kinds of jobs 'existed in significant numbers in the national economy.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1)). *See also Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). "For guidance on such questions, ALJs often seek the views of 'vocational experts.'" *Biestek*, 139 S. Ct. at 1152. Vocational experts "are professionals under contract with [the Social Security Administration] to provide impartial testimony in agency proceedings." *Id.* "They must have expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement

in or knowledge of placing adult workers with disabilities into jobs.'" *Id.* (internal quotation marks and alterations omitted). "Many vocational experts simultaneously work in the private sector locating employment for persons with disabilities." *Id.* "When offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" *Id.* at 1152-53 (quoting Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2). It is well established that "[t]he Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). "A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Buckner v. Astrue*, 646 F.3d 549, 560-61 (8th Cir. 2011) (internal quotation marks omitted).

Here, Plaintiff does not dispute that the VE's testimony was based on a correctly phrased hypothetical question that accounted for all of Plaintiff's impairments. Instead, Plaintiff argues that the ALJ improperly relied on that testimony because the VE retracted that testimony.

The premise of Plaintiff's argument—that the VE retracted her testimony about the numbers of jobs that would be available to someone with Plaintiff's RFC—is not supported by the record. When the ALJ posed to the VE a hypothetical question about an individual with Plaintiff's RFC, the VE testified that such a person could do work such as light laundry worker (with at least 150,000 jobs in the national economy), cleaner or housekeeper (with at least 300,000 jobs), and packing line worker (with at least 200,000 jobs). (Tr. 68-69). After identifying the category of light laundry worker jobs, the VE testified that an "example" *DOT* code would be number 302.685-010

(laundry worker, domestic, domestic service).[2] (Tr. 69). After identifying the category of cleaner or housekeeper jobs, the VE testified that a "sample" DOT code would be number 323.687-014 (cleaner, housekeeping, any industry).[3] (Tr. 69). After identifying the category of packing line worker jobs, the VE testified that a "sample" DOT number would be 753.687-038 (packing line worker, rubber goods industry).[4] (Tr. 69).

When Plaintiff's attorney described a *different* hypothetical individual with several additional restrictions, the VE testified that although she could identify some specific DOT job codes that would be consistent with the second hypothetical individual, she could not give testimony regarding the numbers of such jobs that exist in the national economy. First, she identified the job of Hand Assembler, DOT No. 734.687-074, stating that "that particular DOT fit those requirements, however, I think if I, as we had discussed in a prior case, the numbers are not based on the state DOT, so I cannot testify that there would be any significant number, or I cannot even approximate, how many of that particular DOTs that would be." (Tr. 72). Shortly after making that statement, she reiterated it: "I can say that that particular DOT would fit those requirements, but my numbers are not based on a particular DOT. So, I cannot testify to any number of those jobs." (Tr. 73). The ALJ asked what her numbers were based on, and she stated, "My numbers are based on the occupational employment survey which includes numerous DOT codes which would fit under the category of [INAUDIBLE]." (Tr. 73). The VE then testified about another DOT code that would fit with the second hypothetical (Table Worker, 739.687-182) but stated, "again my numbers are based on numerous DOT codes, and so I cannot testify to any numbers." (Tr. 73). She then testified that a third DOT code (Light Cleaner or Housekeeper, DOT

---

[2] *See Dictionary of Occupational Titles* No. 302.685-010 (4th ed. 1991), 1991 WL 672657.
[3] *See Dictionary of Occupational Titles* No. 323.687-014 (4th ed. 1991), 1991 WL 672783.
[4] *See Dictionary of Occupational Titles* No. 753.687-038  (4th ed. 1991), 1991 WL 680354.

code 323.687-014) would fit the hypothetical, but stated, "again, I cannot testify to any numbers with that specific DOT code." (Tr. 73-74).

Plaintiff interprets the above testimony to mean that the VE admitted, on cross-examination, that she could not testify to the number of jobs available any particular DOT code, and  therefore that she was retracting (or at least demonstrating to be baseless) her testimony about the numbers of jobs available under the first hypothetical. The Court disagrees. In addressing the first hypothetical, the VE never testified that there were particular numbers of jobs available for particular DOT codes. Instead, she testified that there were particular numbers of jobs available within particular categories described in the Occupational Employment Survey ("OES"), with each OES category containing multiple DOT codes. Thus, her later testimony that she did not have job numbers for any particular DOT code was not inconsistent with her earlier testimony regarding the first hypothetical, and it certainly does not indicate that she retracted her earlier testimony. Instead, her testimony addressed to the second hypothetical simply indicated that, for a hypothetical individual with several additional restrictions beyond those in the RFC, the VE was able to identify DOT codes but was unable to testify about job numbers.[5]

Plaintiff also suggests VE's testimony must have been unreliable because Plaintiff's own reading of the OES shows that the job categories identified by the VE include jobs with requirements that a person with Plaintiff's RFC could not perform. For example, Plaintiff points out that the OES group that includes laundry workers and cleaner/housekeepers (OES group 37-2012) includes the detailed work of a butler (DOT No. 309.674-010, reasoning level of 3) and the

---

[5] It is not apparent from the record why the VE was not able to use an analysis of the OES data to provide job incidence estimates for the second hypothetical individual when she was able to do so for the first hypothetical individual. It may be that with the additional restrictions in the second hypothetical, the information in the OES did not provide sufficient information for her to estimate job numbers. The Court notes that Plaintiff's attorney did not cross-examine the VE on this point.

heavy exertion level work of a hotel housecleaner (DOT No. 323.687-018), both of which would be beyond Plaintiff's capabilities. *See* https://www.onetonline.org/crosswalk/ (last visited September 17, 2020). But the VE did not testify that Plaintiff could perform *all* of the jobs within the OES group of 37-2012. To the contrary, as Defendant points out, the publicly available data on the website cited by Plaintiff shows that there are 1,494,400 jobs in the OES group of 37-2012, https://www.onetonline.org/link/summary/37-2012.00 (last visited September 17, 2020), yet the VE only testified that there were 450,000 jobs in that category a person with Plaintiff's RFC could perform. Similarly, although the OES group for packing line worker (group 53-7064) includes 673,400 jobs, https://www.onetonline.org/link/summary/53-7064.00, the VE only testified that there were 200,000 jobs in that category that a person with Plaintiff's RFC could perform. The reasonable reading of the ALJ's testimony is that limited the number of jobs she testified to the subset of jobs in each category a person with Plaintiff's RFC could perform.

As Defendant points out, courts have found testimony very similar to the VE's sufficient to satisfy the ALJ's burden at Step Five. In *Clerk v. Berryhill*, the VE was asked to "provide the DOT Title, Code and SVP time as well as the number of jobs that exist in the national economy for each unskilled occupation that [an] individual [with the plaintiff's RFC] could perform," and the VE provided interrogatory responses stating:

| | |
|---|---|
| Production Workers | 108,000 jobs |
|   e.g., Bench Assemblers | 706.684-042 L/2 |
| Maids & House Cleaners | 306,000 jobs |
|   e.g., , Laundry Worker | 302.684-010 L/2 |

No. 4:16-cv-1552-CAS, 2018 WL 4593564, at *4 (E.D. Mo. Sept. 25, 2018). The plaintiff in *Clerk* argued that the ALJ's decision relying on this evidence was not supported by substantial evidence, because each of the broad categories identified by the VE included numerous DOT codes, some of which required skills and abilities the plaintiff did not have. *Id.* at 5. The plaintiff argued that

the numbers offered by the VE represented the total number of jobs within the broad categories

and included jobs exceeding Plaintiff's limitations. *Id.* at \*6. The plaintiff also argued that there is

no reliable data from the Department of Labor for the number of jobs within an individual DOT

code. *Id.* at \*5. The court rejected the plaintiff's arguments and found that the VE's testimony

constituted substantial evidence. *Id.* at \*6-\*7. First, the court noted that the ALJ had been asked to

provide "the number of jobs that exist in the national economy for each unskilled occupation that

the individual *could perform*," not to provide job numbers for broad categories, and that it was

proper for the ALJ to "assume that the expert framed his answers based on the factors the ALJ told

him to take into account." *Id.* at \*6 (quoting *Whitehouse v. Sullivan*, 949 F.2d 1005, 1006 (8th Cir.

1991)). Second, the court noted that "the figures the VE did give do not match the number of jobs

in the national economy for the broader categories. For example, he wrote '108,000 jobs' next to

Production Workers, but there are more than twice that number for the national economy." *Id.* The

court concluded:

> It is apparent from the record it was the VE's opinion that in the national economy
> there are 108,000 light positions with a SVP level of 2 that plaintiff could perform
> under the Production Workers category, and an example of one of these positions
> is bench assembler, DOT 706.684-042. Likewise, there are 306,000 jobs that
> plaintiff could perform in the national economy that are light positions with a SVP
> level of 2 in the Maids and House Cleaners category, and an example of one of
> these positions is laundry worker, DOT 301.684-010. While plaintiff argues there
> are a wide variety of DOT codes within the broader categories of Production
> Workers and Maids and House Cleaners that plaintiff could not perform because
> they are highly skilled or more physically demanding, the VE did not include these
> jobs in his figures, as he noted that the jobs he was including were "L/2," in other
> words, light positions with SVP levels of 2. (Tr. 253).

*Id.* at \*6.

Other courts have reached similar conclusions *See Boyd v. Colvin*, 831 F.3d 1015, 1021-

22 (8th Cir. 2016) (holding the VE's responses constituted substantial evidence at Step Five where

the VE gave job numbers based on broad categories and cited more specific jobs as examples;

14

noting that the expert had made it clear that all of the jobs he identified in the broad categories were consistent with the hypothetical and that the VE had acknowledged that the specific jobs cited were merely examples); *Howes v. Colvin*, No. C14-4067-MWB, 2015 WL 5011973, at \*10 (N.D. Iowa Aug. 24, 2015), *report and recommendation adopted*, 2015 WL 5472942 (N.D. Iowa Sept. 16, 2015) (finding similar VE testimony sufficient at Step Five; stating, "The Commissioner contends that the VE simply provided examples of jobs within general types of work that the hypothetical individual could perform. I agree. Indeed, I do not know how the VE's testimony could be clearer on this point.").

Plaintiff has cited no cases holding that similar evidence is not sufficient to support an ALJ's Step Five finding. However, Plaintiff suggests that *Clerk*, *Boyd*, and the other cases cited by Defendant are distinguishable from the instant case because those cases predate the Supreme Court's opinion in *Biestek*. Plaintiff suggests that in *Biestek*, the Supreme Court imposed a "higher bar" for vocational expert testimony that was not cleared in this case. The Court disagrees.

In *Biestek*, the Supreme Court held that a VE's refusal to provide the data underlying her opinion upon the claimant's request does not categorically preclude the VE's testimony from constituting "substantial evidence." *Biestek*, 139 S. Ct. at 1152. The Court noted that in determining whether an agency determination is supported by substantial evidence, a court "looks to an existing administrative record" and determines whether it contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1154 (internal quotation marks omitted). The Court rejected the plaintiff's argument that the refusal to provide data always interferes with effective cross-examination or that the absence of such testing always requires treating an opinion as unreliable, stating, "even without specific data, an applicant may probe the strength of testimony by asking an expert about (for example) her sources and methods—

15

where she got the information at issue and how she analyzed it and derived her conclusions." *Id.* at 1156. The Court found that the issue of whether a VE's testimony constitutes substantial evidence must be determined on a "case-by-case" basis, taking into account "all features of the vocational expert's testimony, as well as the administrative record," while "defer[ring] to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157.

The Court's discussion in *Biestek* suggests several factors that might be relevant to the question of whether a "a reasonable mind" could accept the expert's testimony, including the VE's credentials, the number of years of experience the VE has, the VE's history of giving sound testimony about job availability in similar cases, the VE's testimony about how he or she arrived at her conclusions, whether the VE "answers cogently and thoroughly all questions put to her  by the ALJ and the applicant's lawyer," whether anything in the record conflicts with anything the VE says, whether the claimant's attorney requested the supporting data on which the VE relied, whether the VE produced the supporting data on which she or he relied, and whether the VE had a good reason for not disclosing the data on which she or he relied. *Id.* at 1155-57.

After consideration of the evidence in the record in light of the factors discussed in *Biestek*, the Court finds that the VE's testimony about the number of jobs a person with Plaintiff's RFC could perform constituted substantial evidence on which the ALJ reasonably relied. The VE's resume indicates that she had more than twenty years of relevant experience, was a certified rehabilitation counselor, and had been qualified as a vocational expert by the Social Security Administration. (Tr. 66, 262-64). Plaintiff's counsel did not challenge her qualifications. The VE cogently and thoroughly answered all of the questions put to her by the ALJ and by Plaintiff's lawyer. As discussed above, the VE never retracted any of her testimony or gave any answers on cross-examination that were inconsistent with her initial testimony. The VE testified about the

16

sources on which she relied, and although Plaintiff's counsel had the opportunity to cross-examine her about her sources or methodology and to ask for more specific information about how she reached her conclusions about the numbers of jobs available to someone with Plaintiff's RFC, Plaintiff's counsel did not do so. Nothing in the record before the ALJ conflicted with anything in the VE's testimony regarding the jobs available to someone with Plaintiff's RFC. On these facts, the Court concludes that there was sufficient evidence from which a "reasonable mind" could conclude that the VE's testimony was reliable and that the Commissioner had met his burden of showing that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

## V.    CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.


_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of September, 2020.